FORD HARDWOOD LUMBER COMPANY *v.* CLEMENT.

Opinion delivered February 13, 1911.

1. CONTRACTS—CONSTRUCTION.—Where the interests of the parties to a contract conflict under a clause of doubtful purport, the contract should be construed most strongly against the party who prepared it. (Page 531.)

2. SAME—CONSTRUCTION.—Courts may acquaint themselves with the persons and circumstances that are the subject of the statements in a written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them and to judge of the meaning of the words and of the application of the language used to the things described. (Page 532.)

3. SAME—RESCISSION.—Where the conduct of a party to a contract is tantamount to a refusal to perform, the other party is justified in treating the contract as rescinded.  (Page 532.)

4. CORPORATION—LIABILITY OF STOCKHOLDER.—The president of a corporation cannot accept property from himself in payment of his stock subscription without express authority to do so from the corporation's managing board.  (Page 533.)

5. SAME—LIABILITY OF STOCKHOLDER.—A stockholder in an insolvent corporation may, to the extent of his unpaid stock subscription, be held liable in equity by a creditor of such corporation.  (Page 533.)

6. DAMAGES—PROSPECTIVE PROFITS.—Where plaintiff agreed to perform certain work for defendant which he was prevented from doing by defendant's fault, he is entitled to recover the profits which the evidence makes it reasonably certain that he would have made had defendant carried out its contract.  (Page 533.)

Appeal from Mississippi Chancery Court, Osceola District; *Edward D. Robertson,* Chancellor; affirmed.

STATEMENT BY THE COURT.

On the 28th day of October, 1907, S. N. Clement entered into a contract with Ford Hardwood Lumber Company, a corporation of Tennessee, by which he agreed to erect a mill at a certain location and to saw for the corporation certain timber which the evidence showed amounted to 11,000,000 feet on lands described in contract. He was to saw the timber into lumber in a "first-class" manner and load same on tram cars for the sum of $3.50 per thousand feet, log scale. The corporation agreed to have the logs delivered to Clement's mill, and to use its "best endeavors" to keep the mill supplied with logs, and to place the logs in such shape as to be readily handled by cable for drawing the logs into the mill. The payments were to be made on the 10th of each month for all logs sawed the preceding month. In case the corporation did not furnish sufficient tram cars, then Clement was to "bulk the lumber on platform, and the corporation was to then load same at its own expense, such logs as were quarter sawed were to be paid for at the rate of $7 per thousand feet. In January, 1909, S. N. Clement filed his complaint against appellants in the chancery court, in which he set out the contract; alleged that the parties entered upon the performance of it; that he had fully performed the contract on his part by erecting the mill and sawing the logs that had been delivered to him by

appellants "in all respects as provided in said contract;" that appellants, after the contract was made, disposed of half the timber they had agreed to deliver to him; that they removed their log camp from the other lands described in the contract, took their teams elsewhere and wholly abandoned performance of said contract, failing and refusing to keep, or to endeavor to keep, said mill supplied with logs. He alleged that the cost of sawing logs under the contract had been less than $1.50 per thousand feet, and that the cost of sawing the logs yet to be delivered would not exceed $1.50 per thousand feet. He alleged that the Ford Hardwood Lumber Company was insolvent, that it was a *dummy* corporation, and was contrived and used solely as a means of protecting E. M. Ford from personal liability for his obligations; that E. M. Ford has never paid any money to the corporation for the amount of the capital stock subscribed by him, and still owed the entire amount thereof. There were allegations that the corporation was a foreign corporation, and that it had not complied with the laws of this State, and was not authorized to do business in Arkansas; that all the stockholders were nonresidents, and only E. M. Ford had any property in this State.

S. N. Clement further alleged that at the time the contract was made E. M. Ford represented to him that the corporation, Ford Hardwood Lumber Company, was the owner of all the timber described in the contract; that said representation was made with the intent that S. N. Clement should act upon it; that Clement did believe and act upon the representation by making the contract and erecting the mill and sawing the logs at great expense as alleged. He averred that the legal title to the land and timber described in the contract was in E. M. Ford, as he well knew at the time the contract was made.

The prayer of the complaint was that S. N. Clement have a decree for damages in the sum of $21,000; that E. M. Ford be adjudged to pay the amount of his subscription to the capital stock of the corporation, and that same be applied to the satisfaction of the decree herein; that the equitable title in the lands described in the complaint be subjected to the payment of any judgment obtained by Clement; and that he have all other proper relief.

The appellant, Ford Hardwood Lumber Company, answered, admitting that it was a corporation of Tennessee, and that it entered into the contract with Clement. It admitted that E. M. Ford never paid any money to the corporation for the amount of the capital stock subscribed by him, but alleged that he paid all the capital stock in property. It admitted that all the stockholders were nonresidents, and that none of them except E. M. Ford had any property in Arkansas. It denied all the other allegations of the complaint and set up the following:

"That the corporation was organized in good faith, and that E. M. Ford, who is the chief stockholder in said corporation, was the owner of certain timber in Mississippi County, Arkansas, and in the State of Mississippi, and when the said corporation was organized, and in payment of said stock therein, he credited on the books of the said corporation all of the said timber so transferred by him in payment of said stock, and that, when advised that said timber should be conveyed by a deed, the said Ford executed and delivered to said corporation his deed, conveying all of said timber, but after the organization of said corporation and the issuance of said stock by him in payment of said timber, this defendant has had absolute control and charge of said timber, and the defendant, E. M. Ford, has never in his individual capacity claimed any interest therein nor sought to control or dispose of the same. This defendant further states that when plaintiff undertook to erect his mill upon said land, same was so erected in such an unworkmanlike manner that said mill was incapable of sawing lumber in such a way that it was of any value, but that it sawed unevenly and made it of such value on account of inferior grade that this defendant could not receive it, and that the defendant was compelled to, and did, purchase additional machinery for the plaintiff, and the delay in the proper erection of said mill by the plaintiff and his inability to saw and deliver to this defendant lumber as per its contract resulted in the loss to this defendant of the sum of $5,000, and this plaintiff, after sawing approximately 500,000 feet of logs for this defendant, was never in a position to comply with his contract in any respect.

"This defendant further states that it entered into the contract with the plaintiff in good faith; that it was the owner of

6,000,000 feet of timber described therein, and states that it contracted for the timber on said section 16, but was unable to complete said contract, but expected to deliver to the plaintiff the amount of timber of the kind growing upon said section 16 from other land, had not the plaintiff put it beyond his power to carry out the terms of said contract."

E. M. Ford answered and admitted that he was and always had been the holder of practically all of the capital stock of Ford Hardwood Lumber Company. He admitted that he had never paid in money the amount of the capital stock subscribed by him, but denied that he still owed for the whole or any portion thereof. He admitted that the title to the land and timber at the time said contract was made stood in his name, but says that title to timber was then and at all times held for the use and benefit of the Ford Hardwood Lumber Company, and was afterwards transferred to said corporation. He denied all the other allegations of the complaint, and concluded his answer with an averment that he entered into the contract for the Ford Lumber Company as its president, and that all of his acts were in his representative capacity as president of the lumber company, and not for himself individually.

Subsequent to this W. E. Ammons and R. H. Clement were by consent of the parties made plaintiffs also, and joined in all the allegations of the original complaint, and prayed that the court would grant them the relief therein prayed if the court was of the opinion that they were entitled to such relief. Attachments were issued and levied upon the lands as the property of appellants.

The court, after hearing the evidence, found that S. N. Clement made an arrangement with W. E. Ammons and H. C. Clement by which the latter were to take part of the profits of the performance of the contract; that S. N. Clement was entitled to recover for the use of W. E. Ammons and Robert H. Clement the sum of $9,000 damages for breach of contract by the appellants; and rendered judgment against appellants in favor of appellees for that sum, and sustained the attachment, and directed the property attached sold to satisfy the judgment. The appellants have duly prosecuted this appeal.

*W. J. Lamb* and *C. H. Trimble,* for appellants.

1. Clement had no right to elect to declare a forfeiture, as his contract had terminated, and he was released. Clark on Contracts, pp. 510, 527-9-524.

2. The failure to furnish logs was not a breach of the contract; it was only a temporary cessation. The company was only to use its *best endeavors* to furnish logs. 9 Cyc. 579; *Ib.* 587; 66 Ala. 189.

3. No notice was given before suit; this was necessary. 137 U. S. 78; 128 Ala. 221; 63 Kans. 43; 61 Pac. 109; 68 N. J. L. 31; 56 Pac. 1021; 63 Kan. 745; 55 L. R. A. 706; 56 Atl. 672; 52 Atl. 306.

4. Assuming that there was a breach of the contract obligation to use its "best endeavors," what are the consequences? The contract was divisible. 119 Ala. 52. The words "best endeavors" simply mean that the company would use all possible effort to log the mill and would do so, if able. 62 Am. St. 38; 3 Lans. (N. Y.) 520; 13 So. 343; 33 Conn. 1; 11 W. Va. 158; 58 Md. 261; 5 Cush. (Mass.) 156.

5. The contract being divisible, plaintiff was merely entitled to damages for the delay sustained to the time of bringing the suit. 110 N. C. 351; 9 Cyc. 648; 47 N. J. L. 290-308; 9 Cyc. 649. The evidence shows there was no design to abandon the contract. 30 A. & E. Enc. L. 1261; 113 N. W. 856.

6. Ammons and Clement had no right to sue.

7. E. M. Ford was not personally liable for the debts of the corporation. 2 Ch. 323; 9 Lea 694. The owner of all or substantially all of the stock in a corporation is not liable for its debts. 92 Fed. 735; 43 Kan. 225; 4 Atl. 404; 10 Pac. 17; 52 Mich 87.

8. The damages are excessive. Compensation is limited to such injuries as results of the breach as on the face of the contract or by special notice must be held to have been in contemplation of the parties. The expected profits were not proved. Sedgwick on Damages, c. 4; *R.* c. 5, § 170-171-4.

*Julian C. Wilson* and *Percy & Hughes,* for appellee.

1. The company was bound under the contract to furnish logs. Whatever "best endeavors" may mean, Ford must have made an honest effort to keep the mill supplied. A mere failure

to get a good price for lumber would not justify his failure or refusal. 46 W. Va. 426; 7 H. & N. 92. The contract should be construed most strongly against appellants. 90 Ark. 256.

2. The evidence shows a total breach of the contract. A waiver of a breach is not a waiver of damages. 3 Page on Contracts, § 1509; 78 Ark. 336; 153 U. S. 550.

3. Ford was personally liable—he was the corporation. 1 L. R. A. (N. S.) 176. He had never paid for his stock. 2 Cook on Corp., § 716; 54 Ark. 68; 146 U. S. 703; 88 Tenn. 476; 17 Fed. 48; 21 A. & E. Enc. (2 ed.) 897 *et seq.*

4. Plaintiff is entitled to recover the profits which the evidence shows he would reasonably have earned. 91 Ark. 427; 129 S. W. 805; 80 Ark. 228; 78 *Id.* 336; 69 *Id.* 219.

WOOD, J., (after stating the facts). First. In May, 1908, after S. N. Clement had operated the mill under the contract for some time, he made an agreement with Ammons and Clement by which they were to operate the mill for an indefinite time under the contract he had with the lumber company. S. N. Clement, in consideration that Ammons and Clement would carry out the contract for him with the lumber company, agreed to give them all the proceeds of the contract except fifty cents per thousand; in other words, agreed to let Ammons and Clement have $3 per thousand for performing his contract with the Ford Lumber Company. S. N. Clement told Ford to pay Ammons and Clement the proceeds of the contract for their services under it except fifty cents per thousand. The residue of fifty cents per thousand for the logs sawed was to be retained by the company on the debt that S. N. Clement owed it. This agreement was entered into between S. N. Clement and Ammons and Clement with the consent of the company. There was no new contract made by the company with Ammons and Clement, and no releasing of S. N. Clement from the contract he had made with the company. He still retained his interest in the contract, and Ammons and Clement were but subcontractors under him. We are of the opinion that the preponderance of the evidence does not show an assignment of the contract by appellee to Ammons and Clement, but does show that he had subcontracted with them for a certain per cent. of the proceeds, to carry out his contract with the company. S. N. Clement obtained the consent

of the company to this arrangement, but there was no agreement between him and the company and Ammons and Clement whereby the rights and obligations of S. N. Clement under the contract were to be transferred from him to Ammons and Clement, and whereby the company was to release him from the obligations and liabilities of the contract. There were no contractual relations whatever between Ammons and Clement and the Ford Lumber Company. Page on Contracts, § 1255.

S. N. Clement was the party in interest. Any liability of the lumber company for a breach of the contract was to him, and not Ammons and Clement. Ammons and Clement were neither necessary nor proper parties. But, as they were only made parties by consent, no error was thereby committed to the prejudice of appellants.

Second. It is alleged that appellants, after the contract was made, disposed of part of the timber they had agreed to deliver under the contract, and moved their log camp and teams elsewhere, and wholly abandoned performance of the contract. E. M. Ford, for the company, bought from Young the timber called for in the contract "as logs in section 16-10-8." There were about 5,500,000 feet of this timber. Ford was to pay Young for this timber on the 10th of each month after the logs were sawed by S. N. Clement. Ford refused to carry out the contract with Young, and to take the logs from him on section 16-10-8, and to furnish same to appellee. On the contrary, Ford agreed to a rescission of his contract with Young, and permitted Young to dispose of these logs to other parties. In this way Ford virtually parted with one-half the timber that he had contracted to deliver to appellee. Ford in his testimony stated that the contract between the Ford Hardwood Lumber Company and Young "was cancelled by reason of the inability of S. N. Clement to saw the logs that Young hauled to the mill yard, and that if S. N. Clement had properly sawed the logs brought to the mill the contract with Young on section 16 would not have been cancelled." But Young testified that the contract was rescinded because Ford did not pay for the logs, and that it was not on account of any delay of Clement to saw the logs into lumber. And W. J. Driver testified: "That he was the attorney for J. R. Young in 1908 to enforce the collection of a claim due J. R. Young from E. M.

Ford on account of timber removed from section 16-10-8; that they met in the office of Mr. Ford in the Randolph building in Memphis. Mr. Ford stated to Mr. Young that he was unable to carry out the terms of the contract because of his inability to dispose of the timber and collect the purchase price therefor; that he delivered lumber to the Thompson Lumber Company, and that it was unable to pay for it. After consultation it was mutually agreed by the parties that the contract would be rescinded."

There is, therefore, a clear preponderance of evidence showing that Ford failed to furnish the logs according to his contract with appellee because of "inability to dispose of the timber and collect the purchase price therefor," and not because of any failure on the part of appellee S. N. Clement to perform his contract. The failure on the part of the company to furnish nearly half the logs specified in the contract, unless excused by some language of the contract itself, would constitute a breach of contract that would entitle appellee to damages.

The rescission of the contract between the lumber company and Young, which rescission resulted in depriving appellee of the right to saw about 5,500,000 feet of lumber, occurred in March, 1908. The appellant company, however, continued to furnish logs under the contract, and appellee continued to saw them into lumber until December 15, 1908, when, as appellants confess and as the uncontroverted evidence shows, appellant company ceased to furnish logs under its contract. On or about the date last mentioned the company moved its logging camps and teams to another job about one mile away and "went to logging there." Ford testified that neither Ammons and Clement nor S. N. Clement made any objection, or manifested any willingness to go on with the contract. "Ford further testified that it was not the intention of the company to stop supplying the mill permanently. Robert Clement testified concerning this that "he went to the mill to run and carry out his father's contract," that "he quit sawing because they had no more logs, and about the time they quit the lumber company moved its outfit to another job and went to lumbering there. Mr. Ford said he had to go down there and get some timber off before the first of the year, said his time was out on the other job the first of the year, and said at the present price of lumber he was not making enough

out of it, and said he did not know when he would be able to log any more." The witness continued as follows: "I then asked him, told him that I would like to have some definite understanding in regard to when he intended to return; that if he was not going to furnish logs for the mill I would remove my crew to Mississippi; and he said he could not get any definite information right then. He never gave any definite information, and I moved our men away about two weeks afterwards."

While there is some conflict, a finding that appellee had performed his part of the contract is not against the clear preponderance of the testimony. Therefore the lumber company is without excuse for failing to perform its part of the contract unless it was justified in so doing by the following language of the contract, towit: "the first party agrees to use his best endeavors to keep the said mill supplied with logs." In the first clause of the contract the first party "agrees to have them (logs) delivered to second party's mill." The contract contained covenants for reciprocal services. There is no clause requiring only "best endeavors" on the part of appellee in performing his part of the contract.

Having entered upon the performance of the contract, he could not be excused from his failure to perform on the ground of "best endeavors" and thus be relieved of liability for damages resultant to the other party to the contract. Neither can the lumber company be excused from its failure to perform on such ground. To so construe the "best endeavor" clause would make it repugnant to the first and last clauses. The effect of such construction would be to only hold the lumber company to its covenants with "a rope of sand." To carry out the contract on the part of appellee necessarily involved large expenditures. Appellee testified that he had expended about $7,000. He had to spend a considerable sum ($3,000) before he could get ready to saw at all. He had "no other source of supply except the logs" the lumber company was to furnish. The cost of the operating expenses was $27.50 per day. Therefore it could not have been in contemplation of the parties by the "best endeavor" clause to require the lumber company to furnish logs only when it could sell the lumber output, or only when it could sell to some one from whom it could collect, or only when it could sell at

a profit. The last clause of the contract reads: "This contract is for all logs suitable for sawmill purposes on above mentioned land," etc. This clause, as well as the first, imports an absolute obligation on the part of the lumber company to supply appellee the logs mentioned in the contract. The contract must be construed as a whole, and its various clauses given that construction that will make them consistent with each other if possible. Where the interest of the parties to the contract conflict under a clause of doubful purport, it should be construed most strongly against the party who prepared the contract. *Gulf Compress Co.* v. *Harrington,* 90 Ark. 256.

"Courts may acquaint themselves with the persons and circumstances that are the subject of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described. *Wood* v. *Kelsey,* 90 Ark. 272. Construing the contract in the light of these familiar rules, the "best endeavor" clause was but giving emphasis to the obligation upon the part of the lumber company, expressed in other clauses, to supply appellee with logs, and, in addition, promising to supply them so that they could be "readily handled."

It follows that the failure of the lumber company to supply the logs in section 16-10-8, and its failure altogether to furnish logs after December 15, 1908, were breaches of contract. For the latter breach the appellee had the right to treat the contract as rescinded and to sue the company for the consequent damages; for the company, by moving its teams and logging camp elsewhere and not indicating any purpose to return, manifested the intention of abandoning the contract. If it in fact did not intend to abandon the contract, it should have so informed the subcontractors when they asked for explanation of such conduct. A concealed purpose to return, under the circumstances, was as if no such purpose existed. Appellee could not be expected to keep his plant idle, at great expense, awaiting a return which might never occur. Time was at least so far of the essence as to not make it incumbent on appellee to wait an indefinite time. He was entitled to some definite information as to when the lumber

company would return if it intended to return at all. As the company had committed the first breach, the duty devolved on it to explain. Its conduct was tantamount to a refusal to perform its contract. *Spencer Med. Co.* v. *Hall,* 78 Ark. 336; *Jno. A. Gauger & Co.* v. *Sawyer & Austin Co.,* 88 Ark. 422; *Harris Lumber Co.* v. *Wheeler Lumber Co.,* 88 Ark. 491; *Singer Mfg. Co.* v. *W. D. Reeves Lumber Co.,* 95 Ark 363. See *Anvil Mining Co.* v. *Humble,* 153 U. S. 540.

Third.  Ford was liable for the amount of the judgment against the corporation. The corporation was insolvent. It was not shown that the company had any assets, and it owed, besides appellee's claim, more than $3,000. Its capital stock was $30,000. Ford had subscribed for $29,600 of this, for which he claimed to have paid by transferring real estate and other property to the corporation. But there is no evidence that any such transfer was ever made. Ford, as president of the corporation, could not accept property from himself in payment of his stock, without express authority to do so from its managing board. The directors had not given him any such authority. 2 Cook on Corporations, 716; *Simon* v. *Sevier Association,* 54 Ark. 58; *Potts* v. *Wallace,* 146 U. S. 689, 705, 706.

Besides, the evidence does not warrant the conclusion that Ford had transferred any property to the corporation. No deeds were executed to the corporation. Under the proof in this record it must be held that he was indebted to the corporation for the full amount of his subscription to the capital stock. In equity, he was liable for the claim of appellee against the corporation. 1 Cook, Corp., § § 204-205, and notes; *Walter* v. *Merced Academy Assn.,* 126 Cal. 582; *Harrell* v. *Blount,* 112 Ga. 711; *Cornell's Appeal,* 114 Pa. St. 153.  See also *Fletcher* v. *Bank of Lonoke,* 71 Ark. 1.

Fourth.  "Where plaintiff entered into a contract to perform certain work for the defendant, which he was prevented from doing by the fault of defendant, plaintiff is entitled to recover the profits which the evidence makes it reasonably certain that he would have made had defendant carried out its contract." *Beekman* v. *Kittrell,* 80 Ark. 228; *Hurley* v. *Oliver,* 91 Ark. 427; *Singer Mfg. Co.* v. *W. D. Reeves Lumber Co.,* 95 Ark. 363. See

also *Spencer* v. *Hall*, 78 Ark. 336; *Border City Ice & Coal Co*. v. *Adams*, 69 Ark. 219.

The evidence tended to prove that the cost of sawing the logs into lumber would be between $1.35 and $2.00 per thousand feet. The quantity of lumber appellee and subcontractors had manufactured amounted to about 2,000,000 feet. The lumber company agreed to supply about 11,500,000 feet. The quantity of lumber appellee did not get to saw therefore by reason of the failure of the lumber company to carry out its contract was 9,500,000 feet. Even at a cost of $2 per thousand, the profit to appellee, if the contract had been fully performed, would have exceeded by several thousand dollars the amount of the decree.

The record does not disclose any error for which the judgment should be reversed, and it is therefore affirmed.

KIRBY, J., not participating.