TAYLOR *v.* UNION SAWMILL COMPANY.

Opinion delivered December 16, 1912.

1. EVIDENCE—AMBIGUITY IN DEED—PAROL EVIDENCE.—A deed conveying "white oak timber" is ambiguous, and parol evidence is admissible to show the sense in which the parties used the term. (Page 521.)

2. CONTRACTS—CONSTRUCTION.—In interpreting a contract, ordinary words must be taken in their ordinary sense unless a technical sense is established by a preponderance of the evidence, and this use is shown to be of such generality among the class of persons concerned that the party using them may be inferred to have used them in that sense. (Page 522.)

3. SAME—CONSTRUCTION.—Where the interest of the parties to a contract conflict under a clause of doubtful import, it should be construed most strongly against the party who prepared the contract. (Page 524.)

4. CUSTOM AND USAGE—WHEN BINDING.—A local custom to include overcup oak, cow oak and post oak under the term "white oak" must be uniform, reasonable and well established before it can be held to govern the terms of a contract. (Page 524.)

Appeal from Union Chancery Court; *J. M. Barker,* Chancellor; reversed.

### STATEMENT BY THE COURT.

This suit was instituted by appellee against appellant to enjoin the latter from cutting and removing certain species of oak timber from certain lands in Union County, described in the petition, and also for the purpose of reforming a deed of conveyance made by J. R. Taylor, appellant's ancestor, to appellee on the 16th day of May, 1905.

The appellee alleged that the appellant, without right or authority, entered upon and commenced to cut and remove a lot of timber coming under the term of "white oak timber;" that said timber had been sold by the appellant's ancestor to the appellee. Appellee also alleged the insolvency of appellant, and prayed that he be restrained from cutting "the white oak timber on said lands, including forked leaf, cow oak, overcup, and post oak, and that its title thereto be quieted, and its deed reformed and corrected so as to clearly include in the description therein all the species of oak above named."

The appellant, in answer, set up that he was the owner of the land on which the timber was situated, having received the same by settlement with the estate of his ancestor, J. R. Taylor. He set up that by virtue of his purchase from the estate of J. R. Taylor he became the owner of the pine timber ten inches in diameter and over at the stump on said lands, as well as the timber known as white oak timber of said dimensions. He denied that the plaintiffs were the owners of any

cow oak, post oak or overcup oak timber on the land described, and denied that his ancestor, J. R. Taylor, intended to convey to the plaintiff any title to such timber. He admitted that he was insolvent. He set up damages by reason of a restraining order that had been issued, and prayed that plaintiff be decreed to have no interest in the cow oak, post oak and overcup oak under their timber deed from his ancestor, J. R. Taylor, and asked that title "to said cow oak, post oak and overcup oak be quieted as against said plaintiff."

The timber deed from appellant's ancestor, J. R. Taylor, to the appellee, after describing the lands, conveyed to appellee for a consideration of $3,000 in cash, recited "all the pine and white oak timber ten inches in diameter and over at the stump on said lands."

The court below found that "the word 'white oak,' as used in said deed of conveyance, includes within its meaning the various species of white oak commonly called forked leaf oak, overcup, cow oak, and post oak," and entered judgment in favor of the plaintiff for the possession of each of said species of oak above named, and perpetually restraining the appellant from cutting, manufacturing or removing said species of oak from the land. The appellant duly prosecutes this appeal.

*R. G. Harper* and *Pat McNally,* for appellant.

1. The term "white oak," having a common well known popular meaning in Union and adjoining counties, should be construed according to that popular and well-understood meaning in timber sales, especially between the parties affected. "White oak," as so construed, does not include post, cow nor overcup oak. The grantor so understood it, and it was his intention only to sell the white (forked leaf) oak, and knew nothing of the technical, arbitrary and mercantile meaning attached by scientists and lumber associations. Deeds must be construed so as to effectuate the intention of the grantor. 22 Ala. 435; 29 Me. 169; 52 Mo. 318; 51 W. Va. 106; 13 Cyc. 601; par (p.) and (C. C.) 107 Ill. 141; 117 *Id.* 379; 49 N. Y. 464-9; Starkie on Ev., § § 292-4; Parsons on Contracts, § 541.

2. A knowledge, express or implied, of a particular usage or technical meaning must be brought home to the party to be affected by it. 4 Mass. 245; 9 *Id.* 155; 17 *Id.* 449;

3 Pick. 414; 22 U. S. (9 Wheat.) 581; 26 U. S. (1 Pet.) 89; 20 Fed. 240; 79 Ia. 603.

3.    A party who takes an agreement prepared by another, and upon its faith parts with something of value, should have a construction most favorable to himself.    97 Ark. 522, 531; 90 *Id.* 256; 76 U. S. 394-407.    Evidence of the secret motives and intention of one of the parties is immaterial.    68 Ia. 330.

4.    The acts of parties under a contract shows the construction placed upon it.    108 Ind. 382; 52 N. Y. 636; 13 Cyc. 608; par. H; 62 S. W. 734; 45 Hun. (N. Y.) 198; 110 N. Y. 569.

*Gaughan & Sifford,* for appellee.

1.    The term "white oak" timber includes all species of white oak, commonly called forked leaf, overcup, cow and post oak, and J. R. Taylor so intended in his conveyance. 9 Cyc. 579; 12 *Id.* 1041; 20 Ark. 251.

2.    While a chancellor's findings are not binding on appellate courts, they will not be disturbed except where the preponderance of the evidence is clear.    44 Ark. 216.

WOOD, J., (after stating the facts).    The testimony on behalf of the appellee tended to prove that, according to the general custom of those buying, selling, and manufacturing oak timber into lumber, when one buys or sells white oak timber it includes the species known as forked leaf, cow oak, overcup and post oak.    The testimony of the witnesses on behalf of the appellant, on the other hand, tended to prove that when one bought timber under a deed specifying "white oak," in Union County, where this timber is situated, he would get only that species of white oak known as forked leaf, and not including the various other species of cow oak, overcup and post oak.    The testimony showed that the government classified oak into two families, viz:, white oak and red oak, white oak including the various species of forked leaf, cow oak, overcup and post oak.

The testimony of the witnesses on behalf of the appellee and the appellant showed that on the lands on which the timber in controversy is situated there were species of oak timber commonly and popularly known and designated as white oak, cow oak, post oak and overcup oak.

Mr. Webster's definition of "white oak" is as follows: "An American oak of the eastern United States, having characteristic leaves with usually seven deep, rounded, entire lobes; also, its very hard strong wood, used in construction work and in manufacturing. By extension, any species of oak of the group of which the above is typical, having acorns maturing the first season," etc.

There is sufficient ambiguity therefore as to the meaning of the term "white oak," as used in the deed, to warrant the testimony introduced both on behalf of the appellee and the appellant tending to show the sense in which this term was employed. It could serve no useful purpose to set out in detail and discuss the evidence tending to support the contention of the respective parties.

The appellee contends that the term "white oak" was intended to include all the various species of white oak, cow oak, post oak and overcup oak. The appellant, on the other hand, contends that the term "white oak" was only intended to include the single species of forked leaf oak, or what is commonly and popularly known as white oak, and that the parties did not intend by the term "white oak," as used in the deed, to include the other species of oak commonly known as cow oak, post oak and overcup oak.

We are of the opinion that the finding of the chancellor to the effect "that the term 'white oak' as used in the deed of conveyance includes in its meaning the various species of white oak commonly called forked leaf oak, overcup, cow oak, and post oak" is clearly against the preponderance of the evidence.

It is a well-established rule of construction that "in interpreting a contract ordinary words must be taken in their ordinary sense unless a technical sense is established by a preponderance of the evidence, and this use is shown to be of such generality among the class of persons concerned that the party using them may be inferred to have used them in that sense." *Potter* v. *Phoenix Ins. Co.*, 63 Fed. 382.

In *McCoy* v. *Erie & Western Trans. Co.*, 42 Md. 498, it is said, (quoting syllabus): "However terms may be understood in their ordinary sense, if the parties have attached other or unusual or arbitrary meaning to them, to be derived from

a fair interpretation of the contract, they have a right to so employ them, but to accomplish such purpose and to vary the common understanding the meaning ought to be plain and free from reasonable doubt."

The testimony of the witnesses on behalf of the appellee for the most part shows that they were giving to the term "white oak" its technical sense as generally understood by the trade, or those dealing in the business of manufacturing forest products. But the decided preponderance of the evidence, in our opinion, shows that it was not the intention of the grantor to use the term "white oak" in its technical sense, but according to what was popularly and generally known in the community where the timber was situated as white oak.

Witness Seaman, who made the contract for the appellee, testified that he bought all of the pine and oak timber that appellant's ancestor, J. R. Taylor had except the pin oak and red oak. He said that he thought "the cow oak and other oaks except pin oak and red oak were all considered in the deed." Witness Scott, who wrote the deed, stated that Seaman, who made the contract for appellee, reported that the red oak and pin oak were not to be included in the deed, and that in writing the deed, when he got to the kind of timber conveyed, he told Taylor what Seaman said, and that Taylor then told the witness that the pin oak and red oak were not to go in, whereupon the witness wrote the deed specifying white oak, which he intended to cover the white oak species, that is, everything other than red oak and pin oak.

The testimony of Mrs. J. R. Taylor, who executed the deed with her husband, tends to contradict the testimony of Seaman and Scott. She says: "When I signed the deed with my husband, I did not understand that I was selling the cow oak, post oak and overcup, but understood that we were selling nothing but the white oak, and by the term "white oak" I mean what is commonly known as the forked leaf oak. Two deeds were made. Mr. Taylor received a copy of the deed, and the change was made in the copy given to Mr. Taylor so as to make it read 'white oak.'" She further says, "When we went to the office at Huttig (where the deed was executed), my husband had the word 'white oak' written on the deed before it was presented to me. He explained to me the con-

tract before we went down there. When the deeds were presented, they called for all the oak timber, and my husband changed it to 'white oak' timber. The word 'white oak' was written in after the deeds had been prepared and presented. Mr. Taylor told me he simply had the words 'white oak' inserted in the deed."

The physical appearance of the deed corroborates Mrs. Taylor, showing that the deed, before the word *"white"* was inserted, first specified "all the pine and oak," and that the word "white" was inserted above, between the words "and" and "oak."

There was testimony showing that after the deed was executed Taylor made use of post oak timber on the land for fencing, and that he claimed that he had not disposed of any of his oak timber except the white oak, meaning the forked leaf; that he had not included in the deed the other species of oak on the land.

In the recent case of *Ford Hardwood Lumber Co.* v. *Clement*, 97 Ark. 522, 532. we said: "Where the interest of the parties to the contract conflict under a clause of doubtful purport, it should be construed most strongly against the party who prepared the contract." See also *Gulf Compress Co.* v. *Harrington*, 90 Ark. 256. That principle is applicable here. The draftsman for appellee could have easily put the matter beyond dispute by inserting the various species of white oak in the deed if the parties intended to include them.

We are of the opinion that the preponderance of the testimony does not show that there was a local usage in Union County to the effect that when white oak was sold under a deed that specified white oak timber the same included, or was intended to include, also the other species of oak known as cow oak, overcup and post oak, and we are convinced that, even if there was such a custom, it was not brought home to J. R. Taylor, the ancestor of appellant, when he made his deed to appellee. If there was a local usage of trade whereby the term "white oak" included the other species of overcup, cow oak and post oak, that usage must have been uniform, reasonable and well established before it could be held that appellant's ancestor knew the same and contracted with reference thereto. *Walls* v. *Bailey*, 49 N. Y. 464, 12 Cyc, § 1035-1042. True,

some of the witnesses on behalf of appellee testify to a general custom prevailing in southern Arkansas to include other species of oak, towit, overcup, cow oak and post oak, under the term "white oak" in conveyances using that term. But we doubt whether the preponderance of the evidence, even by appellee's own witnesses, shows that there was a uniform custom to include all other species of white oak, towit, cow oak, overcup and post oak. For instance, one of the witnesses, E. C. Nelson, testified that the words "white oak" included forked leaf, overcup and cow oak. He omitted post oak. Another witness, A. S. Johnson, said that the term "white oak" included "forked leaf white oak, cow oak, overcup and post oak," including them all. Another witness, H. H. Brinkman, said that the term "white oak" included forked leaf and cow oak and overcup, omitting post oak. Another witness, W. V. Brown, testified that the term "white oak" included all the other species, towit, cow oak, post oak, overcup oak, "and many other varieties of oak timber." Another witness, Pingle, testified that the term "white oak" included "the different species of white oak, such as forked leaf, overcup, post oak, cow, chestnut, etc." Witness Scott testified that the term "white oak" included all other species of oak called post oak, overcup and cow oak. Witness Hampton testified that the "accepted meaning of white oak in Union County covers every species of white oak, including cow oak, but I don't state that the term 'white oak' would cover post oak and overcup oak, although post oak and overcup oak are used for staves and bolts, as they are both tight-grained timber, but more defective than white oak and its species."

It thus appears that the testimony of the witnesses for the appellee by no means establish the fact by a preponderance that there was a uniform custom to include under the term "white oak" all the other species of oak named and claimed by the appellee in its complaint, towit: cow oak, post oak, and overcup oak. The witnesses for appellee differ as to the kinds of oak that are included under the term "white oak." But, on the other hand, the witnesses for the appellant testify uniformly that the term "white oak" has a popular and well-understood meaning in Union County, where the timber in

controversy is situated, and that it does not include overcup, cow oak and post oak.

As the finding of the chancellor, in our opinion, upon the whole record, is not supported by a clear preponderance of the evidence, the judgment is reversed, and the cause remanded with directions to dismiss the complaint for want of equity, and for further proceedings on appellee's claim for damages, according to law and not inconsistent with this opinion.