GEORGE L. WALKER v. THERON F. GIDDINGS, COMMIS-
SIONER OF INSURANCE.

*Benefit societies—Endowment insurance—Authority to do business.*

1. Insurance payable on the expiration of a fixed period comes
within the definition of endowment insurance.
2. A beneficiary society incorporated under Act No. 104, Laws of
1869 (How. Stat. chap. 118), which provides only for the pay-
ment by the society of a certain sum in case of death, and
for periodical payments in case of the sickness or other dis-
ability of the member, is not authorized to conduct an endow-
ment insurance business.
3. The words "such business," used in section 3 of Act No. 119,
Laws of 1893, entitled "An act to define what shall constitute
fraternal beneficiary·societies," etc., and which provides that
all associations coming within the description as set forth in
section 1 of the act, organized under the laws of this or any
other state, and now doing business in this State, may con-
tinue "such business," provided they comply with the pro-
visions of the act regulating annual reports, etc., mean such
business as was authorized under the act under which the
association was incorporated.

*Mandamus.* Argued December 18, 1894. Denied Decem-
ber 22, 1894.

Relator applied for *mandamus* to compel respondent to
receive and file the reports of a fraternal beneficiary as-
sociation, and to issue the statutory certificate authorizing
it to do business. The facts are stated in the opinion.

*D. F. Glidden,* for relator.

*A. A. Ellis,* Attorney General, for respondent.

LONG, J. Relator, on behalf of the American Monitor,
a fraternal beneficiary organization, filed his petition for
*mandamus* to compel the respondent to receive and file the

reports of said association according to the provisions of Act No. 119, Laws of 1893, and to issue his certificate of authority to said association to carry on and transact the business specified in the several sections of its articles of association, constitution, and by-laws.

The petition sets forth substantially that said association was incorporated on August 9, 1893, and is a corporation organized and existing under the laws of this State as a fraternal beneficiary organization, operating through a lodge system, and paying to its members or their beneficiaries benefits upon death, disability, or old age; that by its constitution and by-laws it is authorized to issue to its members certificates in sums of $250 each, payable to such members at a specified time, or upon total or partial disability, or, upon death of such members, to the beneficiaries of such members.

This association was incorporated under Act No. 104, Laws of 1869, being chapter 118, How. Stat., and on the date of its organization filed its articles of association with the Secretary of State. The Commissioner of Insurance refused to receive and file the reports or to issue the certificate, for the reasons:

1. That by the articles of association, constitution, and by-laws of the American Monitor it is proposed to carry on what is commonly known as "endowment insurance," or the paying of a specified sum upon the arrival of a certain stated time.

2. That the law under which said association was incorporated has been repealed, save as to corporations existing at the time the act of 1893 took effect, which was August 27, 1893; and, as said association has never reincorporated under the act of 1893, but merely continues its business by virtue of section 3 of that act, it has no authority to do any other business than that specified in Act No. 104, Laws of 1869.

Section 1 of the act of 1869, under which the association was incorporated, provides:

"That any number of persons, not less than five, may become a body corporate and politic for the purpose of securing to the families or heirs of any member, upon his death, a certain sum of money, to be paid by such corporation either out of its fund or by an assessment made upon the members of such corporation, or upon the members of the class in such corporation to which such deceased member belonged, or for the purpose of securing in the same manner a certain sum of money, weekly or monthly, to any member disabled from attending to his ordinary duties by sickness or other disability."

Section 5 of article 1 of the constitution of the association provides:

"The supreme directory shall have the power, through its board of managers, to issue endowment or life certificates of not exceeding $250 each, payable in 100 months, or upon total disability or death; or, when there shall be a sufficient sum in the maturity fund, the lowest serial number of the endowment certificates may be retired under the direction of the board of managers in accordance with the terms of the certificate."

The act under which the association was incorporated, it will be noticed, provides only for payment in case of death, or for payments in case a member is disabled by sickness or other disability; while the constitution of this association not only provides for payment in case of death and disability, but also endowments payable at the end of 100 months. It is too well settled to need the citation of authority that corporations can exercise only such powers as are expressly or by implication granted to them. Bac. Ben. Soc. & Life Ins. § 47; Ang. & A. Corp. § 256. Subdivision 3 of article 2 of the constitution of the association, relative to the objects of the order, provides for the naming of beneficiaries, and the receipt of benefits by such members or the beneficiaries named, in a sum not exceeding $3,000 in all in the endowment and life classes. The act of 1869 was amended by Act No. 192, Laws of 1883, but the amendment in no manner enlarged the privileges

of corporations organized under the act of 1869, but, on the other hand, limited the beneficiaries of the member to the husband, wife, family, heirs, creditors, or assigns of the member.

But it is contended by relator that section 3 of Act No. 119, Laws of 1893, gives validity to all corporations organized and doing business within this State on condition only of complying with the act as to filing reports, etc.; that section 10 of that act provides for reincorporation under the act, but expressly negatives any obligation so to reincorporate; that it appears clear from the reading of the act that the Legislature intended (1) to recognize existing organizations, regardless of reincorporation, and by requiring reports; (2) that upon complying with the provisions of the act respecting the filing of reports the commissioner shall issue his certificate to do business. It is further contended that there had never been any inhibition in the statutes as to fraternal beneficiary organizations paying benefits in any form or manner desired until the act of 1893, and that up to the act of 1893 every statute had expressly excepted from all its provisions such fraternal beneficiary organizations; and that the act of 1893 by implication recognizes the right of such organizations to do what they have in the past done. On the other hand, the contention of the Attorney General is that this association, having been incorporated under the act of 1869, is governed by its terms, and can only do such business as by that act authorized; and that the act of 1893 does not enlarge its powers. Act No. 119, Laws of 1893, is entitled:

"An act to define what shall constitute fraternal beneficiary societies, orders, or associations; to provide for their incorporation and the regulation of their business, and for the punishment for violation of the provisions of the act of their incorporation; and to repeal all existing acts inconsistent therewith."

Section 1 of the act provides that—

"A fraternal beneficiary association is hereby declared to be a corporation, society, or voluntary association formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit. Such association having a lodge system, with ritualistic form of work and a representative form of government, and making provision for the payment of death benefits, may, in addition thereto, provide for the payment of benefits in case of accident, sickness, disability, or old age of its members. The fund from which the payment of such benefits shall be made, and the fund from which the expenses of such association shall be defrayed, shall be derived from assessments or dues collected from its members."

It then provides to whom death benefits may be made payable,—who made beneficiaries. Section 2 of the act provides how such association may be organized. It is then provided by section 3 as follows:

"All such associations coming within the description as set forth in section 1 of this act, organized under the laws of this or any other state, province, or territory, and now doing business in this State, shall be considered duly organized, and may continue such business: *Provided*, that they hereafter comply with the provisions of this act regulating annual reports, and the designation of the Commissioner of Insurance as the person upon whom process may be served, as hereafter provided."

It is contended by relator that the words "may continue such business," used in the above section, mean such business as the association had theretofore been doing; that is, this association had been doing the business of issuing endowment certificates of $250 each, payable in 100 months, and that, therefore, though the act under which it was incorporated may not have permitted the issuing of such endowment certificates, yet the act of 1893 is an enabling act, and now permits the organization to issue them. On the other hand, the Attorney General contends that the word "such," in section 3, means such business as was authorized under the act under which the association was

incorporated. The construction given by the Attorney General is correct. We cannot accede to the relator's construction of these words. If his contention be correct, it must necessarily follow that, however illegal the act which the association was performing or was organized to perform, such acts were made legal by section 3. It is very evident that the word "such" had reference solely to the business which was authorized by the act under which the associations were incorporated.

It is contended, however, that this is not an endowment fund which is provided to be paid by these certificates. It is an amount stated to be paid at the arrival of a certain and fixed period, and comes within the definition of endowment insurance. In Cooke, Ins. § 107, it is said:

"Sometimes the contract to pay on the death of the insured is conjoined with a contract to pay on the expiration of a fixed period, should he live so long. Such a contract is called a 'contract of endowment insurance,' though, so far as concerns the contract to pay on the expiration of a fixed period, it is not, strictly speaking, a contract of life insurance at all."

See, also, *Levy v. Van Hagen*, 69 Ala. 17.

It follows from this that the association has no right to have the certificate to do such business as it claims, or to have its reports received and filed with the Commissioner of Insurance. This association sets up that it was organized under the act of 1869, and it must be held to derive all its powers from that act, and that it cannot do any business except such as is permitted by the act itself.

The Attorney General suggests in his brief that this association could not reincorporate under section 10 of the act of 1893. It has not attempted to reorganize. That question is consequently not before us, and we shall not pass upon it on this record.

It is also suggested by the Attorney General that the act of 1869 is repealed by the act of 1893, saving corpora-

tions already organized, and that hereafter no corporations can be organized under it; but, as this association was organized and had filed its articles of association with the Secretary of State before the act of 1893 took effect, that question is not before us.

The writ must be denied.

The other Justices concurred.