LESLIE v. BELL.

Opinion delivered December 17, 1904.

1. CONTRACT—CONSTRUCTION.—A contract will be construed as unfavorably as its terms will admit against the party who proposed and prepared it. (Page 342.)

2. SAME—CASE STATED.—Where L drew up a contract with B whereby L obligated himself to set aside a sale of lands under a judgment, and in the event of doing so was to retain a part of the lands and convey the residue to B, and, failing to set aside the sale, L redeemed the lands, he will be held to have done so under the contract, and required to reconvey to B, as stipulated therein. (Page 342.)

3. HUSBAND AND WIFE—RESULTING TRUST.—Where a husband bought land with his wife's funds, and took title to himself, but treated the land as hers by joining with her in a schedule declaring it her property, and otherwise speaking of it as hers, a trust resulted in favor of the wife, and·after her death in favor of her heir. (Page 342.)

Appeal from Arkansas Chancery Court.

JOHN M. ELLIOTT, Chancellor.

Reversed.

*H. Coleman* and *W. N. Carpenter,* for appellants.

*Gibson & Park,* for appellees.

McCULLOCH, J. · John C. Bell and M. R. Bell filed their complaint in the chancery court of Arkansas County against E. T. Leslie, John Wisdom, John Cannon and John Poll, and alleged as follows: That they were the only heirs of J. H. Bell, who died intestate on the 6th of September, 1896, seized and possessed of the south half of northeast quarter section 10; southeast quarter section 10; southwest quarter section 11, and fractional north half section 15, township 7 south, range 4 west, in Arkansas County; that on the 15th of September, 1896, said lands were sold under an execution upon a judgment against J. H. Bell in favor of the Mansfield Machine Works, and purchased by C. J. Brewer for the sum of $475; that in October, 1896, John C. Bell and E. T. ·Leslie entered into a written contract by which it was agreed that John C. Bell should deed said lands to Leslie in consideration of the latter's instituting and prosecuting at his own expense a suit to set aside said execution sale, and, in the event that the suit was successful, conveying back to Bell eighty acres of the land; that John C. Bell understood that if Leslie did not win the suit he would redeem the land, so that Bell would get eighty acres at all events, but that by mistake the written contract made his getting the eighty acres dependent upon the success of the litigation; that he did not read the contract, and did not discover the mistake until some time after it was signed; that on the 16th of November, 1896, the day on which the contract was signed, he made a deed to said Leslie conveying said lands to him; that Leslie brought suit against Brewer to cancel said execution sale, but was defeated; that he sold the timber on the lands to Wisdom & Cannon for an amount sufficient to redeem the lands from the execution sale, and did redeem them; that he sold to Poll the east half of northeast quarter section 15; and that John C. Bell, at the time he conveyed the lands to Leslie, thought he was the owner of all of said lands. Plaintiffs prayed that all of said contracts and deeds be canceled as clouds upon their title; that the lands be partitioned between them; that they have judgment for the value of the timber removed; and that the defendants be enjoined from further cutting or removing timber from the land.

The contract in question between John C. Bell and Leslie, is as follows:

"The following agreement is hereby entered into by and between John C. Bell, of the first part, and E. T. Leslie, of the second part, witnesseth: That John C. Bell, party of the first part, has this day sold and deeded to the party of the second part all his right, title and interest in the following lands, viz: The south half of northeast quarter of section 10, and the southwest quarter of section 11, and the fractional north half section 15, all situate in township 7 south, range 4 west, in Arkansas County, Arkansas, containing 600 acres more or less, in consideration of eighty acres of land, viz, the east half of northeast quarter of section 15, township 7 south, range 4 west, in Arkansas County, Arkansas, and valued at $300. The party of the second part hereby accepts and confirms said foregoing agreement, and hereby contracts and agrees to defend the title to above lands and meet all of the court expenses and attorney's fees from this date, and use every effort to set aside a certain sale of said lands (on a judgment) rendered against John H. Bell, and in the event of doing so then the party of the second part hereby contracts and agrees to deed back to said John C. Bell the east half of northeast quarter of section 15 as his consideration."

Defendant E. T. Leslie filed his answer, in which he denies that John H. Bell, the father of plaintiffs, died the owner of said lands; denies that the written contract does not correctly state his agreement with John C. Bell, avers that plaintiff John C. Bell understood the same before signing; admits the judgment and execution sale against John H. Bell, and alleges his effort, pursuant to the contract, to set aside the sale by suit for that purpose and his failure in that effort, and that after said failure he redeemed the land; and sets forth other matters not necessary to relate here.

The other defendants also answered separately, denying the allegations of the complaint, so far as relating to them.

It appears, undisputed, in the proof that John H. Bell, the father of plaintiffs, purchased the land in controversy, with others, from one Halliburton, who conveyed the same to him by deed dated December 19, 1857. In making the purchase he used funds the greater part of which were derived through his wife,

Mary A Bell, mother of John C. and stepmother of M. R. Bell, who inherited the same from her father. In 1860 Mary A. Bell and John H. Bell filed in the office of the recorder of Arkansas County, as provided by law, a schedule describing these lands and a number of slaves, and declaring the same to be the separate property of Mary A. Bell. Mary A. Bell died many years before this controversy arose, leaving John C. Bell as her only son and heir at law.

John H. Bell and John C. Bell together resided upon the land until the death of the former in September, 1896. Plaintiff M. R. Bell resided in Kentucky since childhood, and was unknown to any one in Arkansas except his father and brother, who, many years before the transaction involved in this controversy, had received letters from him occasionally.

Plaintiff John C. Bell testifies that on October 20, 1893, his father executed to him a deed for these lands, which deed was written by himself (John C. Bell), and to which he signed his father's name by his direction and in his presence, and that the same was placed in his father's trunk, and there kept until his death. This deed was never acknowledged or recorded, but was introduced in evidence in this case. There was no direct proof as to the delivery of the deed except the testimony of John C. Bell in which he says that his father put the deed in his charge, and told him to put it away in his trunk.

Much proof was taken tending to show that John H. Bell treated the land as the property of his wife, Mary A., prior to her death, and as the property of her son John C. after her death. He remained in possession up to his death, but always declared, when the matter was mentioned, that it was his wife's property and her son's after her death. In recognition of his son's right to the property, he permitted him to use it, sell part of it, etc. And it is shown also that appellant Leslie proceeded in good faith under the contract with John C. Bell, and pursuant thereto brought suit against Brewer, the purchaser at execution sale, to set aside and cancel the sale, and prosecuted the same to final decree at a cost of $175 expended in attorneys' fees and court costs, and after failing to protect the title in this way he redeemed the land at a cost of $543.31, all of which was paid out of the price of timber cut from the land except $100 paid by Leslie.

The decree was for the plaintiffs, cancelling the deed to Leslie and his deed conveying eighty acres to Poll and the timber deed to Wisdom & Cannon, and declaring the title to be in the plaintiffs. The defendants all appealed.

The question first, under the contract between Bell and Leslie, is whether by its terms it was intended that Leslie should reconvey the east half of northeast quarter section 15 to Bell in the event only that he succeeded in setting aside the execution sale by a suit for that purpose, or whether the same should be reconveyed in the event of a redemption from the sale. The contract is ambiguous on this point, and it must be construed as unfavorably as its terms will admit against Leslie who proposed the contract and prepared it. This is an elementary principle which needs no citation of authority to sustain. The contract in one place states that the deed is to be made "in consideration of eighty acres of land, viz, the east half of the northeast quarter of section 15, township 7 south, range 4 west, Arkansas County, Arkansas, and valued at $300." Taking the contract together as a whole, we are convinced that a fair construction of it means that Leslie undertook to protect the title and recover the land and reconvey the eighty acres, retaining the remainder as compensation for his trouble and expense. The contract is silent as to a redemption from the sale, and perhaps, as it does not show affirmatively that the parties had in contemplation a redemption, the duty to do so was not imposed upon Leslie; but, after failing in his effort by suit, he saw fit to adopt another method of protecting the title by redeeming from the sale, and it is the opinion of a majority of the court that he must be held to have done so under the contract, and must therefore perform that part by reconveying the eighty acres to John C. Bell. .

As to the delivery of the deed by John H. Bell to John C., there is grave doubt, but we conclude that there is sufficient evidence to sustain the view of the chancellor that the deed was not delivered, and we will not disturb the decree on that account.

The proof, however, shows that these lands were bought by John H. Bell with funds inherited by his wife, Mary A., from her father's estate, but the title was taken in his own name. The deed from Halliburton recites a consideration of $1,917 paid, and the proof shows that of this $1,100 were money inherited by Mrs. Bell from her father, and the remainder was from the sale of crops

on the land raised by slaves owned by her. The personal property
fell to John H. Bell by virtue of his marital rights, if he saw fit to
treat it as such. *Sadler v. Bean,* 9 Ark. 202; *Gainus v. Cannon,*
42 Ark. 503. But the question here is whether he did in fact take
and hold the personal property of his wife as his own, or whether
he held it for her. All the evidence on that point shows that he
treated the property as belonging to his wife. In 1860 he joined
in a schedule filed and recorded upon the public records of the
county, declaring the lands bought with the fund, and the slaves
still held, to be the separate property of his wife. He always
spoke of the property as his wife's as long as she lived, and after
her death as the property of her son and only heir. In *Gainus
v. Cannon, supra,* Judge Eakin, after announcing the law as here
declared to the effect that the funds of the wife fell to the hus-
band unless he saw fit to hold the same as trustee for her, which
he might do, said: "If the purchase was made with funds which
he held as trustee of his wife, although the deed might be taken
in his own name, it is yet well settled that a resulting trust will
spring up in her favor ; and, in a contest between himself, or his
heirs, and her, in the absence of all claims of creditors, his declara-
tions, made then or at any subsequent time, may be considered,
not for the purpose of showing an express trust, but as tending
to establish the fact that the funds used in purchasing were, in
fact, trust funds of the wife pre-existing in his hands. They would
be self-disserving declarations, in the nature of admissions of
fact, out of which the law would impose upon him a resulting
trust." This is but an application of the settled law governing
resulting trusts to the facts where the husband has bought real
estate, taking title in his own name, with funds to which he was
entitled by virtue of his marital rights, but which he elected to
hold as trustee for his wife. In that case it was found that the
acts and declarations of the husband were too general, and were
insufficient to clearly establish a trust in favor of the wife. In
this case, however, the husband in the most solemn manner
declared that the property was held in trust for the wife, and we
think the evidence amply sustains the contention that a trust
resulted in her favor by reason of the use of the funds held
for her benefit.

That being true, the property descended to appellee John C.
Bell, and passed by his deed to appellant Leslie.

Therefore, the decree of the chancellor is reversed and remanded, with directions to enter a decree in favor of appellant, John C. Bell, for the east half of northeast quarter section 15, township 7 south, range 4 west, and dismissing the complaint as to all other tracts described, for want of equity.

HILL, C. J., absent and not participating.