GENERAL AMERICAN LIFE INSURANCE COMPANY *v.* FRAUENTHAL & SCHWARZ.

4-4531

Opinion delivered February 22, 1937.

664

*W. J. Clark* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*R. W. Robins,* for appellee.

MEHAFFY, J. On December 22, 1920, W. P. Salter made application for insurance and on December 29, 1920, the policy sued on was issued to him. On December 30, 1920, W. P. Salter made the following assignment to appellee:

"For Value Received, I hereby assign and transfer unto Frauenthal & Schwarz (Leopold Schwarz and Chas. and Joe Frauenthal) of Conway, Arkansas, the policy of insurance known as No. 346931, issued by the Missouri State Life Insurance Company upon the life of William P. Salter, of Conway, Arkansas, and all dividend, benefit, and advantage to be had or derived therefrom, subject to the conditions of the said policy, and to the rules and regulations of the company.

"Witness my hand and seal this 30th day of December, 1920.

"William P. Salter (Seal)."

Salter was indebted to the appellee in a sum much greater than the face of the policy, and on June 28, 1932, Salter executed and delivered to Frauenthal & Schwarz the following note:

"I hereby acknowledge myself to be indebted to Frauenthal & Schwarz in the sum of $1,701.58, which sum I agree to pay to Frauenthal & Schwarz or order, on or before my death, together with interest from this date till paid at the rate of................per cent per annum for value received. This note and obligation is secured by a certain life insurance policy No. 346931 for $1,000, issued on my life by the Missouri State Life Insurance Company, St. Louis, Missouri, and held by Frauenthal & Schwarz to pay the premiums on said insurance policy, which premiums, together with interest thereon from date of payment at the rate of ten per cent per annum, I agree to repay to Frauenthal & Schwarz, or order on or before my death.

"William P. Salter."

Frauenthal & Schwarz paid the premiums on the policy for ten years. W. P. Salter died November 12, 1935.

The application was on the company's form, and was printed, and contained the following statement:

"I do make application for the automatic premium loan provision."

The policy contained the following provisions:

"After completion of premium payments for the first two policy years, if any subsequent premium is not paid on the date when due, and remains unpaid during the period of grace, the insured shall, during said period, have the following options:

"1. To surrender this policy at the home office of the company for its cash value; or

"2. To surrender this policy at the home office of the company for a paid-up life policy; or

"3. To let the insurance for the face amount hereof, continue as term insurance, reckoned from the due date of the unpaid premium.

"If the insured shall not, within the period of grace, surrender this policy at the home office of the company for its cash value as provided in Option 1, or for a paid-up life policy as provided in Option 2, the insurance will be automatically continued as provided in Option 3."

Before Salter's death appellee, after having paid premiums for ten years, requested the appellant to put in operation Option 3, for extended term insurance. The appellant declined to do this without the request from Salter, which appellee did not furnish.

Appellee brought this suit to recover $1,000, the face of the policy, statutory penalty, and attorneys' fees.

The appellant answered denying that appellee was the owner of the policy and entitled to the proceeds, and alleging that appellee did not furnish any request from the insured that the provisions of Option 3 be invoked, and the appellant, being uncertain as to whether such a request from the assignee would be binding upon the insured, declined to apply the value of said Option 3; but alleged that on the contrary, and in accordance with what it considered to be its obligations under the policy, it paid the premiums as they matured, and charged the amounts thereof as loans against the policy. It admitted an indebtedness of $765.14, and tendered that amount in court.

Appellant also asked that the heirs of Salter, deceased, be made parties, alleging that they had an interest.

The heirs of Salter were made parties and duly served with process, but failed to appear. There was a trial in the circuit court, judgment for $1,000 and $120 penalty and $125 attorneys' fees. To reverse this judgment, this appeal is prosecuted.

Counsel argue at length the question of whether the assignment is absolute or conditional. We find it unnecessary to decide this question; and, therefore, the evidence with reference to this question is not set out.

It is the contention of the appellant that the assured, when he made the application, elected to have the reserve used in paying premiums, and that the clause in the application: "I do make application for automatic premium loan privilege," was an election to have the company pay the premiums as it did, and that it had a right then to charge the amount of the premiums against the policy, and was, therefore, liable only for the face of the policy, less the premiums paid.

The assignment, however, which was immediately sent to the company, was not only an assignment of the policy, but of all dividend, benefit and advantage, to be had or derived therefrom.

"The assignment of 'all my right, title, and interest in and to said policy or contract of insurance,' as employed in the written assignment, was an assignment of every right the insured had under the policy, including the right to maintain the life of the policy by payment of premiums, and to make a written demand for renewal of the policy for ten-year periods." *National Life Ins. Co. of Vt.* v. *Beck & Gregg Hdw. Co.*, 148 Ga. 757, 98 S. E. 266.

The assignment in the instant case assigned and transferred to the assignee all dividend, benefit and advantage. This was certainly broad enough to assign the right to the assignee to make the election of Option 3. The policy was issued several days after the application was signed, and the provision for paying the premiums, relied on by appellant, contains the following:

"If written request from the insured on the company's form has been received at the home office while this policy is in full force." If the statement in the application be considered as a written request, still there was no policy in force at the time it was made, and for several days afterwards.

Appellant calls attention to the case of *Missouri State Life Ins. Co.* v. *Ross,* 185 Ark. 556, 48 S. W. (2d) 230. It is argued that the Missouri State Life Insurance Company, predecessor of the appellant, always construed this language in the application, as calling for an application of the terms of the automatic premium loan provision. It cites the above case in support of that contention. The court, however, said in that case:

"The parties both evidently understood and construed the contract alike in the application of the 'automatic premium loans' to the payment of premiums; the insured being regularly notified thereof and making no objections whatever to such procedure; and their construction of the contract is entitled to great weight in the correct interpretation."

The court in that case also said that the insured paid very few premiums except with the benefit of the automatic premium loan, and that he was frequently notified of the failure to pay such premiums, and the application by the appellant of the automatic premium loans were not objected to at any time, and that the assured acquiesced in the application made by the company.

In the instant case Salter never paid a premium; he was never notified of anything; but Frauenthal & Schwarz paid all the premiums, and all of the correspondence was with it, and not with the insured. There was no evidence that the assured ever acquiesced in the application of the automatic loan.

The court, in the above case, cites *Craig* v. *Golden Rule Life Ins. Co.,* 184 Ark. 48, 41 S. W. (2d) 769, as supporting the doctrine that the construction the parties themselves place upon a contract is entitled to great weight. There is no evidence that the parties here placed any construction on the contract.

The next case to which appellant calls attention as supporting its contention is *Massachusetts Mutual Life Ins. Co.* v. *Jones*, 44 Fed. (2d) 540. In speaking of the provision in the application, the court in that case said: ''This was the construction the company itself put upon the contract, and in making payments for insured without additional requests in writing, it, in each instance, notified the insured of its action, and furnished him with its receipt accordingly. The effect of its doing so was to continue the life of the policy, and this was precisely what insured intended to happen in his selection of the automatic provision. If insured had then and there repudiated this action, and had demanded the appropriation of the available sum on either occasion to the purchase of extended insurance, another question might arise, but he did nothing of the sort, but, with full knowledge of the company's interpretation of the contract, and its action thereunder, accepted the benefits which the action taken conferred, and upon natural principles of equity is bound by his own acquiescence of the company's construction of the contract, as fully as if he had himself initiated the program, and, by the same token, his beneficiary likewise is estopped to complain.''

The court put its decision on the ground that the assured, with full knowledge, had acquiesced in the action of the company. As we have already said, Salter never paid a premium, and there is no evidence that he acquiesced in anything, and after the application the policy was issued, expressly providing for the options above set out.

Appellant next calls attention to *Emery* v. *Manhattan Life Ins. Co.*, 179 Ky. 76, 200 S. W. 19, L. R. A. 1918C, 568. In that case there was an ordinary assignment to secure the payment of a debt, and when the insured died the policy had a cash surrender value for an amount less than the debt. The court held that the appellant in that case was entitled to the full amount, but that if the amount of the cash surrender value had been more than the debt, appellant would simply have been entitled to the amount of the debt.

The contract in the instant case shows clearly that one of the three options mentioned above was available, and unless the insured elected to take options 1 or 2, option 3 automatically became effective.

A written contract, where there is any doubt, is interpreted against the party who drew the contract, and the contract will be construed most favorably for the other party. 6 R. C. L. 854.

Since the policy expressly provides that the written request for the automatic loan must be on the company's forms and must be received by the company at its home office while the policy is in full force and effect, and since no request was ever made after the policy was issued, option 3, according to the terms of the policy, became effective.

The judgment of the circuit court is affirmed.