CENTRAL STATES LIFE INSURANCE COMPANY *v.* MORRIS.

4-6107                                         155 S. W. 2d 333

Opinion delivered October 13, 1941.

*A. D. DuLaney,* for appellant.

*Donham, Fulk & Mehaffy,* for appellee.

VERNE McMILLEN, Special Judge.   On September 26, 1923, the Home Life Insurance Company issued a fifteen-year endowment policy to Toy Earle Morris in which it agreed to pay the said Toy Earle Morris who was designated as the insured the sum of $2,000 if living on

September 26, 1938, and the policy was in full force and effect; or upon receipt of due proof of the prior death of the insured during the continuance of the policy to pay said sum to the beneficiary, Nell Elizabeth Morris, daughter of the insured. The reserves of the Home Life Insurance Company became impaired, and a reinsurance contract, effective March 31, 1931, was entered into whereby the Central States Life Insurance Company reinsured and assumed, subject to the exceptions, modifications, and limitations stated in the contract, all of the outstanding policies issued or assumed by the Home Life which were in force on that date. The parts of that contract involved in the question here presented are[1] sec-

---

[1] Sections involved are:

### Section I.

(a)   Central States Life agrees, subject to the exceptions, modifications and limitations herein stated, to and does hereby reinsure and assume all the outstanding insurance policies issued or assumed by Home Life which are in force in accordance with the terms of said policies on the day on which this reinsurance agreement becomes effective.

(b)   Whereas the assets of Home Life hereby conveyed to Central States Life are not sufficient at their present value to provide for the discharge of the policy obligations of said Home Life as they mature, as part of the consideration there shall be established and placed against each policy of the Home Life assumed hereunder by Central States Life a lien equal to fifty per cent (50%) of the legal reserve thereon as it has been established and is carried on the books and records of Home Life on the date as of which this reinsurance becomes effective, such lien to bear interest at the rate of six per cent (6%) per annum, compounded annually. Both lien and interest thereon shall be deducted from any payment made by Central States Life pursuant to the terms of said policies, or from any settlement thereunder or from the value used to purchase any paid-up or continued insurance, except as otherwise hereinafter provided.

(c)   Central States Life agrees that in event of the death of an insured while his or her policy is in force it will waive the aforesaid lien or any balance thereof remaining and all interest accumulations thereon and the mortality cost of waiving such lien shall be provided out of the net earnings of the business of Home Life reinsured hereunder during the calendar year in which death occurs. If such earnings are insufficient to provide such mortality cost then Central States Life will provide therefor out of its own surplus; but nothing herein shall obligate Central States Life to maintain any reserve, legal or otherwise, to insure the waiving of liens.

(i)   Central States Life agrees that on any Endowment policy maturing before the lien herein provided shall have been discharged, any reduction of liens as herein provided which becomes effective after the date of such maturity shall be applied to the amount of lien outstanding at the date of such maturity and the amount of such reduction shall be paid to the owner of such Endowment policy at the time such reduction becomes effective; when the total amount paid to such owner shall equal the amount of the lien at the date of ma-

tion I (a), the reinsuring clause; section I (b), in which a lien equal to 50 per cent. of the legal reserve on all policies in force, bearing interest at the rate of six per cent. per annum compounded annually, was established, and which further provided that both lien and interest thereon should be deducted from any payment made by Central States Life pursuant to the terms of said policies, or from any settlement thereunder, or from the value used to purchase any paid-up or continued insurance, except as otherwise provided in the reinsurance contract; section I (c), which provided that Central States Life agreed that in the event of the death of an insured while his or her policy was in force it would waive the aforesaid lien or any balance thereof remaining and all interest accumulations thereon; section I (i), in which Central States Life agreed that on any endowment policy maturing before the lien had been discharged any reduction of liens as provided in the contract which became effective after the date of such maturity should be paid to the owner of such endowment policy at the time such reduction became effective; and section V (b), in which Central States Life agreed to make an accounting on March 31 each year and apply the net earnings, if any, on the assets conveyed to it by the Home Life to the reduction of the liens established in section I (b).

At the time the reinsurance contract was entered into the amount of the lien on the policy of Toy Earle Morris was $434.62, which had increased by addition of interest to $671.45 when the policy matured on September 26, 1938. On October 6, 1938, the Central States Life

turity together with interest at 3½% per annum on the balance of the lien, no further payment shall be made to such owner.

### Section V.

(b) Central States Life agrees that on March 31, 1932, and annually thereafter it shall make a computation based upon the aforesaid statement, taking into consideration the admitted assets, exclusive of all policy indebtedness, and the policy reserve liabilities likewise exclusive of all policy indebtedness, and if the ratio of such net admitted assets to net liabilities shall be not less than fifty-five per cent (55%) then the net earnings of the period ending on December 31st of the year for which such computations are made, after deducting therefrom the mortality cost of waiving liens on policy death claims and any liens waived on payments due under supplementary contracts and monthly disability claims, shall be applied to the reduction of the liens; such reduction shall be effective as of the first day of April following.

made a settlement with Mr. Morris, by which it paid him $5.93, for which he executed his receipt acknowledging payment of said sum in full settlement of the amount due him as of September 26, 1938, on account of Home Life policy No. 25863, in the sum of $2,000, being the full amount of the policy less automatic premium loan of $61.83, premium lien note for $1,260.79, and less reinsurance lien and accrued interest amounting to $671.45, deducted in accordance with the reinsurance agreement.

Mr. Morris died on June 22, 1939, and subsequently Nell Elizabeth Morris, one of the appellees herein, filed this suit as beneficiary under the policy, in which she set up that the policy matured as an endowment on September 26, 1938, and by the terms of the reinsurance agreement the policy remained in full force and effect; that upon the death of the insured on June 22, 1939, it was the duty of appellant under the terms of the reinsurance agreement to waive the lien of $671.45 and pay that sum to her as beneficiary. In its answer, appellant denied that any sum was due her as beneficiary, or that it was the duty of appellant to waive the lien. Thereafter, Mrs. Nell Morris filed her intervention in which she set out that she was the widow, and that the plaintiff, Nell Elizabeth Morris, was the sole and only heir of Toy Earle Morris; that there were no debts against the estate; that if it should be held that the lien was properly payable to the deceased during his lifetime or to his widow and heir after his death, judgment should be rendered in favor of her as widow and of her daughter, Nell Elizabeth, as sole heir.

There was a trial by the court without a jury. In his conclusions of law the trial court held that appellant had a continuing obligation by virtue of section I (i) of the reinsurance agreement to pay to the insured the amount of any reduction in said lien which might accrue, and that in the event of the death of the insured at any time prior to the full payment and discharge of the lien appellant then became obligated by the terms of section I (c) of the reinsurance agreement to waive said lien or any balance thereof remaining and all interest accumulations thereon, and to pay the amount thereof to the heirs or legal rep-

resentatives of the insured. Judgment was entered for appellees as widow and sole heir of Toy Earle Morris for $671.45 with interest, penalty of 12 per cent. and attorney's fee of $100, from which is this appeal.

The only question to be determined on this appeal is whether the appellant became obligated to waive the lien upon the death of Mr. Morris after the endowment policy had matured. There are no disputed facts. Appellees admit the validity of the reinsurance contract, and that Mr. Morris, by his acceptance thereof and by continuing to pay the premiums on the policy, became bound by its terms, as was held by this court in *Home Life Insurance Company* v. *Arnold,* 196 Ark. 1046, 120 S. W. 2d 1012.

Appellant contends that the only right Toy Earle Morris or his estate had under the reinsurance contract was by virtue of section I (i), which abligated the appellant to pay the amount of any reduction of the lien to him or to his estate, and that section I (c) did not apply for the reason that the policy was not in force at the time of the death of Mr. Morris. Appellees contend that the policy was in force when Mr. Morris died, that section I (c) required appellant to waive the lien and pay them the amount thereof, and that section I (i) cannot be construed so as impliedly to exclude endowment policyholders from the benefits of section I (c), which provides: ''Central States Life agrees that in the event of the death of an *insured* while his or her policy is in force, it will waive the aforesaid lien. . . .''

An endowment policy is a contract by which the insurer agrees to pay to the insured a sum certain at the end of a certain period, or if he dies before the expiration of the term fixed, to pay the amount to a person designated as beneficiary. Cooley's Briefs on Insurance, 2d ed., v. 1, p. 32. In this case the Home Life Insurance Company was the insurer, Toy Earle Morris was the insured, and Nell Elizabeth Morris was the beneficiary. From the time the policy was issued until its maturity, the life of Toy Earle Morris was insured, and in the event of his death the beneficiary, Nell Elizabeth Morris, was entitled to receive the full sum of $2,000 as provided in the policy. In that event the appellant would have been obli-

gated to waive the lien under section I (c) of the reinsurance contract. But when this endowment policy matured September 26, 1938, all elements of insurance disappeared. There remained only the obligation to pay the amount due upon maturity of the policy. As stated in *Tennes* v. *Northwestern Mutual Life Insurance Company,* 26 Minn. 271, 3 N. W. 346: "This contract is not purely of life insurance. So far as it is an agreement to pay, upon the death of the husband within ten years, it assured his life, and is a contract of life insurance; but the agreement to pay at the end of the ten years, though the husband be still alive, is not one assuring his life." And in *Walker* v. *Giddings,* 103 Mich. 344, 61 N. W. 512, the court said: "In Cooke, Ins., § 107, it is said: 'Sometimes the contract to pay on the death of the insured is conjoined with a contract to pay on the expiration of a fixed period, should he live so long. Such a contract is called a "contract of endowment insurance," though, so far as concerns the contract to pay on the expiration of a fixed period, it is not, strictly speaking, a contract of life insurance at all.' "

And in Cooley's Brief on Insurance, 2d ed., v. 1, p. 33, in discussing endowment insurance it is stated: "On the other hand, so far as the endowment feature of these contracts is concerned, they are not regarded as life insurance contracts, the endowment being regarded as a mere incident to the life insurance contract."

When this policy of endowment insurance was issued to Toy Earle Morris there were only two contingencies. One was that if he died prior to the 26th day of September, 1938, the insurer would pay $2,000 to his beneficiary. The other was that if he lived until the 26th day of September, 1938, the insurer would pay $2,000 to him. He was living on September 26, 1938, and what had previously been a life insurance policy was then converted into a liquidated debt. This rule is clearly stated in *McDonnell* v. *Mutual Life Insurance Company of New York,* 116 N. Y. S. 35, 131 App. Div. 643, where the beneficiary was seeking to recover a deferred dividend due the insured at the expiration of a fifteen-year period, the insured having died eleven days prior to the expiration

of that period, in which the court said: "But this contention loses sight of the fact that this is a contract for life insurance, that it involves the risk, that after death there is no risk, and that the contract for life insurance as such then and there ceases to be in force. The obligation to pay in accordance with the terms of the contract is in force, but the policy of life insurance is no longer in force. It has been transformed into a liquidated debt by the happening of the contingent event theretofore provided for."

There must be three parties to a life insurance contract—the insurer, the insured, and the beneficiary. Without any one of these there can be no contract of life insurance. When the endowment policy issued to Toy Earle Morris matured, all the rights of Nell Elizabeth Morris, as beneficiary, then and there ceased and terminated, and the appellant was obligated to Toy Earle Morris only. He was no longer an insured, Nell Elizabeth Morris was no longer a beneficiary, and appellant was no longer an insurer. The relationship of debtor and creditor then came into existence. He became a creditor of appellant, entitled to receive the amount due under the policy less the amount of the lien, and any sums by which that lien might be reduced in the future as provided by the reinsurance contract. Since Toy Earle Morris was not an insured at the time of his death and the policy was not in force as a life insurance contract, appellant was not obligated to waive the lien.

We have not overlooked the case of *State ex rel. Attorney General v. New York Life Insurance Co.*, 198 Ark. 820, 131 S. W. 2d 639, which we do not regard as in conflict with the views herein expressed.

The judgment is, therefore, reversed, and the cause dismissed.

SMITH, J., disqualified.

HUMPHREYS, MEHAFFY and HOLT, JJ., dissent.

HOLT, J. (dissenting). The facts are not in dispute. The policy of Toy E. Morris was one of those assumed by appellant, subject to the conditions of the policy and the terms of the reinsurance agreement set out in the

majority opinion. This policy was issued by the Home Life September 26, 1923, and is a fifteen-year endowment policy, which matured September 26, 1938. The annual premium of $129.78 was regularly paid by Morris and the policy was in full force throughout its entire term. Morris was living when the policy matured on September 26, 1938, but died on June 2, 1939.

October 6, 1938, appellant paid Morris $5.93 and took from him the following signed receipt prepared by appellant: "Central States Life Insurance Company, Saint Louis, Dated at Little Rock, Ark., this 6th day of October, 1938. Received of Central States Life Insurance Company the sum of $5.93 in full payment of the amount due me as of September 26, 1938, on account of Home Life Policy No. 25863 on my own life, the said sum being the $2,000 face amount of the policy less automatic premium loans for $61.83 and premium lien note for $1,260.79 deducted in accordance with the terms of the said policy, and less the reinsurance lien and accrued interest amounting to $671.45 deducted in accordance with the reinsurance agreement between Home Life Insurance Company and Central States Life Insurance Company."

It thus appears that appellant settled with Morris for the amount due on the face of the policy, at the time, after deducting premium loans, less a reinsurance lien and accrued interest totaling $671.45, which was deducted from the settlement in compliance with the reinsurance agreement. It is this amount with which we are concerned here.

The reinsurance agreement was also prepared by appellant. Section I (c) provides: "Central States Life agrees that in event of the death of an insured while his or her policy is in force it will waive the aforesaid lien or any balance thereof remaining and all interest accumulations thereon and the mortality cost of waiving such lien shall be provided out of the net earnings of the business of Home Life reinsured hereunder during the calendar year in which death occurs. If such earnings are insufficient to provide such mortality cost then Central States Life will provide therefor out of its own surplus, but nothing herein shall obligate Central States Life to

maintain any reserve, legal or otherwise, to insure the waiving of liens. . . .''

Section I (i) is as follows: ''Central States Life agrees that on any endowment policy maturing before the lien herein provided shall have been discharged, any reduction of liens as herein provided which becomes effective after the date of such maturity shall be applied to the amount of lien outstanding at the date of such maturity and the amount of such reduction shall be paid to the owner of such endowment policy at the time such reduction becomes effective; when the total amount paid to such owner shall equal the amount of the lien at the date of maturity together with interest at 3½ per cent. per annum on the balance of the lien, no further payment shall be made to such owner.''

The meaning and effect of the above receipt and of these principal provisions, I (c) and I (i), along with I (b) and V (b) of the reinsurance agreement, determine this cause. In arriving at the intention of the parties concerned and the effect to be given the above provisions, the rule is generally well settled that we must construe the contract as unfavorably as its terms will permit against appellant, the party who wrote it.

In *Leslie* v. *Bell,* 73 Ark. 338, 84 S. W. 491, this court held: ''A contract will be construed as unfavorably as its terms will admit against the party who proposed and prepared it.''

In *Fullerton* v. *Storthz,* 182 Ark. 751, 33 S. W. 2d 714, we said: ''. . . if there were ambiguity about this written contract or necessity for construction thereof, all doubt must be resolved and the contract construed more strongly against the party who prepared it. *Wisconsin Lumber Co.* v. *Fitzhugh,* 151 Ark. 81, 235 S. W. 1001.''

And in *Metropolitan Life Ins. Co.* v. *Guinn,* 199 Ark. 994, 136 S. W. 2d 681, it is said: ''This contract must be construed most strongly against the insurance company that prepared it, and if a reasonable construction could be placed on the contract that would justify a recovery, it would be the duty of the court to so construe it.''

See, also, *Coca-Cola Bottling Co.* v. *Coca-Cola Bottling Co.,* 183 Ark. 288, 35 S. W. 2d 579; *Ford* v. *Fix,* 112

Ark. 1, 164 S. W. 726; *Bracy Bros. Hdwe. Co.* v. *Herman-McCain Construction Co.,* 163 Ark. 133, 259 S. W. 384; *General American Life Ins. Co.* v. *Frauenthal & Schwarz,* 193 Ark. 663, 101 S. W. 2d 953.

With these guiding rules, what interpretation and effect should we give the receipt and the provisions of the reinsurance contract?

Appellant relies upon section I (i) which provides that on any endowment policy maturing before the lien is discharged, the owner of the policy shall be given the benefit of any subsequent reduction of the lien. It is insisted that Morris had an endowment policy and that section I (i) established the right of endowment policy-holders to share in future reduction of lien and that this is the only section applicable to endowment policies, and that section I (c), covering release of the lien at death, has no application to endowment policies.

It is clear to me that the receipt, *supra,* purports to cover only what was due on the maturity date of the policy, which recites $5.93 "in full payment of the amount due me as of September 26, 1938." It further provides that $671.45, the amount of the reinsurance lien, was being deducted "in accordance with the reinsurance agreement." This lien money was properly deducted under I (b), [set out in the majority opinon] as of September 26, 1938. Under this section the lien money was not then payable and required the subsequent death of Morris to render it payable. I see nothing in this receipt that bars any subsequent right to the lien money which might accrue under the terms of the reinsurance agreement. It is my view that I (c) applies with equal force to endowment policies as well as life policies. Standing alone, there could be no doubt about it. Had appellant intended that this section should not apply to endowment policies, why did it not plainly say so?

The plain, unambiguous language of this section, I (c), requires appellant to release and pay this lien in full on the death of Morris. It treats Morris like any other policyholder. Courts will prefer that construction of a contract which is most consonant with justice and equity. The applicable rule is stated in 17 C. J. S. 739,

§ 319, as follows: "The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other."

Appellant wrote this provision, I (c), but insists that I (i) takes care of endowment policyholders and under its terms the appellee, Morris' beneficiary, cannot collect the lien money at his death, although beneficiaries under life policies would be entitled to the payment of lien money on the death of the insured. I think no such discrimination was intended or can be read into the provisions of the reinsurance agreement, and that Morris' beneficiary is entitled to collect this lien money at his death just as life policyholders.

Let it be remembered that the insured, Morris, paid the highest insurance rate annually on this fifteen-year endowment policy until he had matured it. Had he died prior to the maturity date, the lien would have been paid just as on life policies, but since he died nine months after his policy matured, the majority opinion holds that his beneficiary is not entitled to this lien money. Why this discrimination against Morris' policy?

Section I (i) provides that endowment policyholders shall have the benefit of "any reduction of liens as herein provided" to be paid "at the time such reduction becomes effective, as provided in V (b). I think the effect of section I (i) is to bring endowment policyholders within the same class as all other policyholders and to permit them to share equally with all other policyholders in the reduction of liens provided for in section V (b). Section I (i) became necessary for the reason that an endowment policy, by its terms, may mature during the lifetime of the insured, as happened in the instant case. Section I (b) provides that from the "pay-off" during the insured's lifetime the amount of the lien and interest shall be deducted, as was done in the instant case. While ordinarily a settlement at the maturity of an endowment policy terminates the contract, the insured here is, under provision I (i) the endowment policyholder, given the

same interest in the future reduction of liens that is given to all other policyholders, thereby placing him on a parity with other policyholders. Section I (i) was inserted to bring about this parity.

Section I (i) deals with the reduction of liens, while section I (c) does not contemplate a reduction, or partial release of the lien money, but requires full payment thereof at death. Section I (i) provides for reduction of liens during the lifetime of the policyholder, while I (c) becomes operative only at his death. Under section I (i) the net assets of the Home Life are to be applied annually during the policyholder's lifetime toward paying off the lien money, but only in case such assets amount to 55 per cent. of the Home Life net liabilities, but under section I (c) any lien money not paid under I (i) becomes unconditionally payable at the policyholder's death. Section I (i) covers the time during the policyholder's lifetime, whereas I (c) comes into play at his death. It seems to me there is no conflict in the two provisions and that effect should be given to both, and when this is done appellee should recover in accordance with the provisions of I (c). The language used is clear and understandable. Unless the intention of the parties clearly appears to the contrary, we should not write into these provisions a meaning that would deny appellee the same benefits and protection afforded ordinary life policyholders.

The record reflects also that Morris had never surrendered the policy in question to appellant. It was found among his papers at his death. In fact, appellant admits that the policy was in full force and effect in so far as it was affected by I (i), but not as to I (c). It seems to me a strained construction to say that the policy was in force for one purpose, but not for another. It is my view that the judgment should in all things be affirmed.

Mr. Justice HUMPHREYS and Mr. Justice MEHAFFY join me in this dissent.