VONNETTE BUSEY CALDWELL, v. MISSOURI INSURANCE COMPANY—192 S. W. (2d) 23

Kansas City Court of Appeals.   January 14, 1946.

*Watson, Ess, Groner, Barnett & Whittaker, Douglas Stripp,* Kansas City, for Appellant.

*Carl L. Anderson, John J. Cosgrove* for Respondent.

260

BLAND, P. J.—This is an action on a life insurance policy, in the sum of $249, issued by the defendant, on the 10th day of February 1936, upon the life of Anna Mae Johnson. Plaintiff was named in the policy as beneficiary. The case was tried before the court without the aid of a jury, resulting in a judgment in favor of plaintiff in the amount of the policy, with interest, together with a penalty of 10% for vexatious delay and $125 attorney's fees, or an aggregate sum of $418.82. Defendant has appealed.

The policy lapsed on November 24, 1941 on account of nonpayment of premiums. Insured died on June 20, 1943. The policy was for endowment insurance endowing insured at the age of 80 but the amount of the policy was made payable to the beneficiary in the event of the prior death of the insured.

It was agreed at the trial: "That the sole issue for decision on the merits of this cause is whether the paid-up endowment at age 80 insurance provided by said policy is 'paid-up insurance' within the meaning of that term as used in Sec. 5855 R. S. 1939, so as to make Sec. 5852 R. S. Mo. 1939, inapplicable to said policy".

Sections 5852 to 5855, inclusive, R. S. Mo. 1939, comprize what are known as the nonforfeiture statutes. Section 5852 provides that, after the payment of three annual premiums, a life policy shall not be forfeited for nonpayment falling due thereafter, but the net value of the policy computed under mortality tables (under conditions therein named) shall be taken as a net single premium for temporary insurance for the full amount of the policy, "*provided* that if the original policy shall be an endowment, payable at a certain time or at death, if it should occur previously, then if the net single premium available for temporary insurance as aforesaid shall exceed the net single premium for temporary insurance granted for the remainder of the endowment term, such excess shall be considered as a net single premium for pure endowment of as much as said excess of premiums will purchase, determined by the attained age of the insured at date of default in the payment of premiums on the original policy, and the table of mortality and interest aforesaid, which amount of pure endowment shall be paid at the end of the original term of endowment if the insured shall then be alive".

Section 5853 establishes an optional provision for a reduced amount of insurance paid up for life which the policyholder may exercise by demand, within 60 days from the beginning of the extended in-

surance provided in section 5852, and provides: "In case of a limited payment life policy, or of a continued payment endowment policy, payable at a certain time, or at death, it shall be for an amount bearing such proportion to the amount of the original policy as the number of complete annual premiums actually shall bear to the number of such annual premiums stipulated to be paid".

Section 5855 provides: "The three preceding sections (including secs. 5852 and 5853) shall not be applicable in the following cases, to-wit: If the policy shall contain a provision for an unconditional surrender value, at least equal to the net single premium, for the temporary insurance provided for hereinbefore, or for the unconditional commutation of the policy for nonforfeitable paid-up insurance, or if the legal holder of the policy shall, within sixty days after default of premium, surrender the policy and accept from the company another form of policy, or if the policy shall be surrendered to the company for a consideration adequate in the judgment of the legal holder thereof, then, and in any of the foregoing cases, this article shall not be applicable: *Provided*: that in no instance shall a policy be forfeited for nonpayment of premiums after the payment of three annual payments thereon; but in all instances where three annual premiums shall have been paid on a policy of insurance, the holder of such policy shall be entitled to paid-up or extended insurance, the net value of which shall be equal to that provided for in this article".

It is agreed, if section 5852 applies, that, under the statute, there was extended temporary insurance for the face of the policy for a period beyond the date of the death of the insured.

The policy provided, in the event of lapse, for its automatic commutation into paid-up insurance of the same type, being endowment at age 80, in amounts determinable from a table in the policy, or, in this instance, paid-up insurance in the sum of $20.597. Defendant tendered plaintiff $20.84 as the amount of the paid-up insurance on the policy, said amount being somewhat in excess of $20.597; it being stated, in the brief, that the error in favor of plaintiff was made in calculating the fractional year from the table. When suit was filed, defendant again tendered $20.84 to plaintiff and deposited said sum with the clerk for the use and benefit of the plaintiff, alleging that this was the amount owing by it. Three-fourths of the net value of the policy on the date of its lapse, calculated on the mortality table and at the interest rate specified in the statutes, is $5.43. This sum, if applied as a net single premium at the attained age of the insured on the date of lapse, calculating said premium on said statutory basis, was sufficient to purchase paid-up endowment, at age 80, in the sum of $20.565. Had the policy been ordinary whole life insurance it would have purchased insurance in the sum of $20.77, or more than the amount provided for in the policy, it being not one of ordinary or whole life but an endowment policy.

It is insisted by the defendant that the court erred in rendering the judgment for plaintiff; that the only judgment plaintiff is entitled to is one for $20.84, the amount of paid-up insurance ($20.597), as agreed under the terms of the policy.

Plaintiff's theory can best be stated in her own words, as follows: "Reduced to practical application this means (the proviso in section 5852) that where there is an endowment policy and there is a single net premium available for temporary insurance, within the meaning of the first part of Section 5852, and such single premium is insufficient to extend the policy to the endowment date, then such single premium shall be used to purchase extended insurance only. Where, however, the single premium is more than sufficient to buy extended insurance to the end of the endowment, then, and in that case only, the excess of such single premium shall be used to purchase pure endowment insurance, which amount of pure endowment shall be paid at the end of the endowment period if the insured should be alive. . . . The policy in question, in so far as it insured the life of Anna Mae Johnson, was insurance on life within the meaning of the non-forfeiture statutes. Being such, it is subject to extended or temporary insurance provided in Section 5852. In so far as it agreed to pay Anna Mae Johnson a certain sum upon reaching her 80th year it is not insurance upon life, but is endowment insurance. It is this feature of the policy that is provided for in the nonforfeiture clause of the policy. No where in this clause does the company agree to continue the policy as insurance on life".

It thus appears that it is plaitniff's contention that the policy, in a sense, is to be divided into two parts, one ordinary or whole life insurance, and the other endowment insurance and that, in the event of its lapse, there cannot be any pure endowment feature left unless there is sufficient equity in the policy to purchase endowment insurance, that is, if the net single premium (mentioned in sec. 5852) is more than sufficient to buy extended insurance to the end of the endowment period, then, and only then, is there any pure endowment remaining.

Plaintiff says further, that section 5855 does not mention endowment insurance, but merely insurance and that endowment insurance is not life insurance.

At the trial no suggestion was made as to what was the net value of that part of the insurance which plaintiff says is life insurance and what portion of the net value arises from the endowment feature.

There are decisons both ways as to whether endowment insurance is life insurance. [See Ballow v. Fischer, 61 Pac. (2d) 423, 426 (Ore.); Briggs v. McCullough, 36 Calif. 542; Drysch v. Prud. Ins. Co., 4 N. E. (2d) 530 (Ill.); State ex rel. Clapp v. Fed. Ins. Co., 50 N. W. 1028 (Minn.); Endowment & Benevolent Ass'n. v. State, 10 Pac. 872 (Kans.); Manhattan Life Ins. Co. v. Stubbs, 216 S. W. 896, 898

(Tex.); Heffelfinger v. Commissioner, 87 Fed. (2d) 991; Talcott v. Field, 52 N. W. 400 (Nebr.); Ellison v. Straw, 97 N. W. 168 (Wisc.); Central States Life Ins. Co. v. Morris, 155 S. W. (2d) 333 (Ark.); Tenness v. N. W. Mut. Life Ins. Co., 3 N. W. 346 (Minn.); Walker v. Giddings, 61 N. W. 512 (Mich.); Cooley's Briefs, 2 Ed., p. 33; McConnell v. Mutual Life Ins. Co., 116 N. Y. S. 35; Industrial Life Ins. Co. v. Hunt, 6 Atl. (2d) 781 (Pa.).]

We are not concerned with this conflict in the decisions for the reason that sections 5852 and 5853 clearly classify endowment insurance and, for the purpose of this case, the policy in suit will be so treated.

The proviso of section 5852, relating to endowment insurance, does not attempt to change the character of the insurance when the policy lapses for nonpayment of premiums. Endowment insurance, such as provided in this policy, is made payable to a beneficiary, other than the insured, if the latter does not live to the age when he is to be endowed. The proviso in section 5852 recognizes this feature and attempts to make use of the equity in the policy to provide life insurance so long as it will purchase it and if anything remains it is to be used to purchase a pure endowment.

The question to be decided is whether section 5855 applies to endowment insurance. Although, the word "endowment" is not used in the section, a reading of the section will disclose that the words "ordinary" or "whole life insurance" are likewise not mentioned in that section. It refers to three preceding sections, among which are sections 5852 and 5853, which mention endowment policies. It does not purport to refer to any particular parts of sections 5852 and 5853, but refers to them as a whole. It has been said that these sections govern all types of reserve bearing policies. [Doty v. Am. Nat'l. Ins. Co., 165 S. W. (2d) 862, 867.] Under plaintiff's theory, section 5855 does not refer to all such policies, but only ordinary or whole life reserve bearing policies and that, although, a person desiring life insurance has the privilege of applying for either whole life insurance or endowment insurance, if he applies for endowment insurance he cannot agree with the company for either an unconditional surrender value, or for an unconditional commutation of the policy for nonforfeitable paid-up insurance, or for a cash surrender value; but if he elects to take endowment insurance, the policy is governed solely by sections 5852 and 5853, providing, in the event of the lapse of the policy, for automatic insurance in the amount of the face of the policy for a limited term under section 5852, or, an optional right to demand paid-up life insurance, which the policyholder may exercise by demand within 60 days under the provisions of section 5853.

The statute indicates no such discrimination between an ordinary or whole life policy and endowment policy, but indicates an intention to give the policyholder some freedom rather than to hold him to

the fixed statutory plan of only extended insurance as an automatic option and, therefore, to allow him to contract for an automatic option for cash surrender or for either kind of insurance; namely, insurance for the full original amount paid up for a limited term or a reduced amount of insurance paid up for life. [State ex rel. Clark v. Becker, 73 S. W. (2d) 769, 771.]

According to plaintiff's theory the insured could only agree in the policy for *ordinary* or *whole life* paid-up insurance with no endowment features in order for the insurance to be governed by section 5855; although, under section 5853, if she took out an endowment policy, she could demand paid-up *endowment* insurance after default. The nonforfeiture statutes indicate no such distinction, but disclose an intention to permit insured to select the kind of policy he or she desires without discrimination as to the character of the policy.

There is no question but that the policy, itself, unconditionally provides for paid-up nonforfeitable insurance in case of its lapse for nonpayment of premiums and, in every way meets the requirements of section 5855.

The judgment is reversed and the cause remanded with directions to the trial court to enter judgment in favor of the plaintiff in the sum of $20.84; the costs to be assessed against plaintiff. Of course, plaintiff is not entitled to the statutory penalty for vexatious refusal to pay and to attorneys' fees.

All concur.